UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GHOST IN THE MACHINE INC. D/B/A SNAKE NATION,

Plaintiff and Counter-Defendant

-against-

PLANNED PARENTHOOD FEDERATION OF AMERICA, INC. and PLANNED PARENTHOOD GLOBAL, INC.,

Defendants.

PLANNED PARENTHOOD GLOBAL, INC.,

Counterclaimant

-against-

KARL CARTER,

Counter-Defendant.

22-CV-9270 (VSB)

**OPINION & ORDER**

Appearances:

Andrew M. Moskowitz
Javerbaum Wurgaft Hicks Kahn Wilkstrom & Sinins, P.C.
New York, NY
*Counsel for Plaintiff and Counter-Defendants*

Brian S. Levinson
Richard A. Roth
The Roth Law Firm, PLLC
New York, NY
*Counsel for Defendants and Counterclaimant*

VERNON S. BRODERICK, United States District Judge:

Before me is Karl Carter's ("Carter") motion to dismiss the third-party complaint filed by Planned Parenthood Global, Inc. ("PPG") and Planned Parenthood Federation of America, Inc., (("PPFA,") and together, "Defendants"). (Doc. 87 ("Motion").) For the reasons stated herein, the Motion is DENIED, PPG's time to serve Carter is extended, and PPG's request to serve Carter by alternate means is GRANTED.

## I. Factual and Procedural Background[1]

This action involves a dispute between Plaintiff Ghost in the Machine Inc. d/b/a Snake Nation ("Snake Nation" or "Plaintiff"), a media company, and Defendants, who hired Plaintiff to undertake a sexual and reproductive health campaign in Africa. After granting Defendants' extension requests to file a response to Plaintiff's Complaint, (*see* Docs. 55, 57), Defendants filed their answer on March 5, 2025, as well as their counterclaims against Plaintiff and their third-party claims against Carter, Snake Nation's CEO. (*See* TPC.[2]) The TPC contains six claims, three of which are against both Snake Nation and Carter and three of which are just against Snake Nation. The six claims include: (i) fraudulent inducement (against Snake Nation and Carter); (ii) willful misrepresentation (against Snake Nation and Carter); (iii) breach of contract (against Snake Nation); (iv) breach of implied covenant of good faith and fair dealing (against Snake Nation); (v) unjust enrichment (against Snake Nation); and (vi) unfair

---

[1] This factual background is derived from the allegations in Plaintiff's Complaint, (Doc. 1 ("Compl." or "Complaint")), and PPG's Third-Party Complaint, (Doc. 66 ("TPC" or "Third-Party Complaint")). I assume the allegations set forth in the Complaint and Third-Party Complaint to be true for purposes of this motion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). However, my references to these allegations should not be construed as a finding as to their veracity, and I make no such findings in this Opinion & Order. A thorough recitation of the facts and procedural history of this action may be found in my January 21, 2025 Opinion & Order granting in part and denying in part Defendants' motion to dismiss Plaintiff's claims. (*See* Doc. 53.)

[2] For clarity, I note that Defendants filed their answer and TPC four times between February 28, 2025 and March 5, 2025, but the filings were rejected three times because of filing errors. (*See* Docs. 58, 60, 62, 66.)

competition/misappropriation (against Snake Nation and Carter). (*Id.* ¶¶ 55–88.)

The same day that Defendants filed their answer and PPG's TPC, Plaintiff's counsel moved to withdraw as the attorney of record for Plaintiff. (Doc. 68.) On March 19, 2025, I granted the motion to withdraw and ordered that "all deadlines in this action are STAYED for sixty (60) days pending Plaintiff's retention of new counsel." (Doc. 71.) Plaintiff submitted four requests for extension of time to secure legal counsel, including requests on May 16, 2025, (Doc. 73), July 21, 2025, (Doc. 76), August 20, 2025, (Doc. 78), and September 15, 2025, (Doc. 80). My last memo endorsement on September 17, 2025 stayed the matter until October 6, 2025. (Doc. 82.)

New counsel for Snake Nation and Carter filed a notice of appearance on September 25, 2025, (Doc. 83), and, four days later on September 29, 2025, filed a letter motion seeking a fifth extension of time to respond to the Counterclaims and Third-Party Claims, (Doc. 84), which I granted the next day, (Doc. 85). On October 15, 2025, PPG filed an affidavit of service indicating that after two unsuccessful attempts at serving Carter at 3674 Charles Drive, East Point, Georgia 30314, ("the Charles Drive Address"), the TPC was served at the Charles Drive Address. (Doc. 86 (the "Affidavit of Service" or "AoS").) On March 20, 2025, PPG's process server "[a]ttempted service" at the Charles Drive Address, but there was "[n]o answer" and were "[n]o vehicles in the driveway." (*Id.*) On March 25, 2025, PPG's process server "[a]ttempted service" at the Charles Drive Address again, and "first, an elderly female said that the defendant was not [t]here" and "[t]hen another female came out and said [that] defendant does not live [t]here." (*Id.*) Approximately seven months later, on October 9, 2025, PPG's process server "[a]ttempted service" at the Charles Drive Address again, where "[a] male came to the door and said that the defendant does not live here," that the male "was just renting and refused to give []

his name," and when the process server "dropped the documents at the door," the male "followed [the process server] back to [his] vehicle and threw the documents into [an] open window," which the process server subsequently "threw . . . out the window and drove off[.]" (*Id.*)

On October 29, 2025, Carter filed a motion to dismiss the TPC, (Doc. 87), along with a declaration by Carter, (Doc. 88), an exhibit of Carter's Critical Skills Visa and General Work Permit issued to him by the Republic of South Africa, (Doc. 88-1), and a memorandum of law in support of the Motion, (Doc. 89 ("Mem.")). On November 10, 2025, PPG filed an opposition to the Motion, (Doc. 102 ("Opposition" or "Opp'n")), along with an affidavit of Brian Levenson in support and several exhibits, (Docs. 102-1–102-12). On November 12, 2025, PPG filed a supplement to its Opposition. (Doc. 104.)[3] On November 17, 2025, Carter filed a reply in support of the Motion, (Doc. 106 ("Reply")), along with a declaration by Carter with several exhibits, (Doc. 106-1), a declaration by Andrew Moskowitz, (Doc. 106-2), and an exhibit of emails between counsel for the parties, (Doc. 106-3).

## II. Legal Standard

### A. *Rule 12(b)(5) Motion to Dismiss for Insufficient Service of Process*

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006) (quoting *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)). "In deciding a Rule 12(b)(5) motion, a Court must look to Rule 4, which governs the content, issuance, and service of a summons." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010). Under Rule 4(m), "[i]f a defendant is not served

[3] Carter opposes the filing of PPG's supplement to its Opposition, (Doc. 104), because it was filed two days after PPG filed it Opposition and without leave of Court, (Reply 6–7). Because the supplement was filed on the day PPG's opposition was due, and there is no prejudice to Carter from the supplement, as he was able to respond to it in his Reply, (*see id.*), I consider PPG's supplement.

within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). If the plaintiff is able to demonstrate good cause, a district court must grant a plaintiff an extension of time for service. *See id.* Even where a plaintiff does not show good cause, however, district courts may exercise discretion to grant an extension of time to effect adequate service. *See Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007) ("We hold that district courts have discretion to grant extensions even in the absence of good cause"); *George v. Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 433 (S.D.N.Y. 2016) (similar). In determining whether to grant a discretionary extension, courts look to "(1) whether any applicable statutes of limitations would bar the action once refiled; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether defendant attempted to conceal the defect in service; and (4) whether defendant would be prejudiced by extending plaintiff's time for service." *DeLuca*, 695 F. Supp. 2d at 66 (collecting cases).

When "a defendant challenges service of process, the burden of proof is on the plaintiff to show the adequacy of service." *Id.* at 64 (internal quotation marks omitted). "Plaintiff must meet this burden by making a prima facie case of proper service through specific factual allegations and any supporting materials." *Sikhs for Just. v. Nath*, 850 F. Supp. 2d 435, 440 (S.D.N.Y. 2012) (internal quotation marks omitted). "Conclusory statements are insufficient to overcome a defendant's sworn affidavit that he was not served." *Darden v. DaimlerChrysler N. Am. Holding Corp.*, 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002) (citation omitted). "[I]n considering a motion to dismiss pursuant to 12(b)(5) for insufficiency of process, a Court must look to matters outside the complaint to determine whether it has jurisdiction." *See Mende v.*

*Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003) (quoting *Darden*, 191 F. Supp. 2d at 387).

### B. *Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim*

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556). "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the Plaintiffs' favor. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir.

2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)).

## III. Discussion

### A. *Insufficient Process*

#### 1. Timeliness of Service

First, Carter argues that the TPC was served past the ninety days provided for in Federal Rule of Civil Procedure 4(m). (Mem. 7.) Carter is correct that PPG executed service on October 9, 2025, 218 days after the TPC was filed and 128 days beyond the ninety days provided by Federal Rule of Civil Procedure 4(m). (*See* AoS.) PPG contends that it nonetheless timely served the TPC because it was served "within three days of the lifting of the stay, and a total of 22 'non-stayed' days after the filing of the [TPC]." (Doc. 104.) Neither party submits any case law in support of their respective arguments regarding whether my Court-ordered stay and extensions of that stay tolled the time to serve the TPC. In any event, Rule 4(m) "explicitly provides that the court shall allow additional time if there is good cause for the plaintiff's failure to effect service in the prescribed [90] days, and authorizes the court to relieve a plaintiff of the consequences of an application of [Rule 4(m)] even if there is no good cause shown." Fed. R. Civ. P. 4(m) Advisory Committee's Note to 1993 Amendment; *see also* Charles Alan Wright & Arthur R. Miller, Time Limit for Service, 4B Federal Prac. and Proc. § 1137 (4th ed. 2026) ("Indeed, the Advisory Committee Notes to Rule 4(m) state that the amendment of the rule allows district courts to relieve plaintiffs from the consequences of Rule 4(m) 'even if there is no good cause shown.'") (internal quotation marks omitted). In determining whether to grant a discretionary extension, courts look to "(1) whether any applicable statutes of limitations would bar the action once refiled; (2) whether the defendant had actual notice of the claims asserted in

the complaint; (3) whether defendant attempted to conceal the defect in service; and (4) whether defendant would be prejudiced by extending plaintiff's time for service." *DeLuca*, 695 F. Supp. 2d at 66 (collecting cases).

PPG appears to have relied in good faith on the belief that its deadline to serve the TPC was tolled while the case was stayed.[4] (*See* Doc. 104.) PPG unsuccessfully attempted service twice, on March 20 and 25, 2025, after I stayed this case for the first time on March 19, 2025, (Doc. 71), and a third time three days after the stay was lifted on October 6, 2025, (Doc. 85). (AoS.) Moreover, PPG's counsel inquired whether Carter would accept service five months earlier on May 9, 2025, (Doc. 102-2), which was sixty-five days after the TPC was filed. Furthermore, Carter appears to have been aware of the TPC since at least May 9, 2025 when PPG's counsel asked Carter to accept service of the TPC two months after it was filed, (*see id.*), September 25, 2025 when Carter's new counsel emailed Defendants' counsel a proposed stipulation extending Snake Nation and Carter's time to respond to the TPC, (*see* Doc. 106-3), or, at the latest, September 29, 2025 when Carter's counsel filed a letter motion seeking an extension of time to respond to the TPC on September 29, 2025, (*see* Docs. 84). Indeed, Carter has demonstrated no prejudice, and claims no prejudice, suffered from the late service or by extending PPG's time to serve Carter. Thus, and as discussed further below, I find that there is good cause to extend the time for service, and even if I did not find good cause, I would exercise my discretion and grant PPG an extension to serve the TPC.

**2. Sufficiency of Service**

Second, Carter argues that the TPC was not personally served or served in Carter's usual

[4] Such an interpretation makes intuitive sense—Defendants should not be prejudiced because the stay was based on Plaintiff's request for a stay so that counsel could be retained.

place of abode. (Mem. 7.) In response, PPG argues that the TPC was properly served because "PPG's process server left the summons and counterclaim/third-party complaint with a person of suitable age and discretion at Carter's home" at the Charles Drive Address. (Opp'n 1.)

"Unless federal law provides otherwise, an individual [may be served by] . . . leaving a copy of [the summons and the complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e). Service may also be made by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Thus, service may be effectuated by complying with New York law, the state where the district court is located, Georgia law, where the service was made, or by "leaving a copy of [the summons and the complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there," Fed. R. Civ. P. 4(e)(2)(b). Both New York[5] and Georgia[6] permit service at the "usual place of abode" of the person served.

Carter contends that he does not live at the Charles Drive Address, which is a property that he concedes his wife owns and at which his mother, sister, and brother-in-law reside, (Reply 3; Doc. 106-1 ¶ 4),[7] because he has been living in South Africa since 2015, (Reply at 2; *see also*

---

[5] New York law allows service "by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend 'personal and confidential' and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served." N.Y. C.P.L.R. § 308(2).

[6] Georgia law allows service "by leaving copies thereof at the defendant's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein, or by delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process." Ga. Code Ann. §9-11-4 (e)(7).

[7] The Affidavit of Service indicates that service was attempted on an "elderly female [who] said the defendant was not here," "another female . . . [who] said [that] defendant does not live here," and, subsequently, a "male . . . [who] said he was just renting." (AoS.) Although the Affidavit of Service does not name any of these individuals, they may be Carter's mother, "who is 78 years old" and "is a tenant at the Charles Drive Address," along with Carter's "sister Janna and her husband" who have "lived there and served as [Carter's] mother's caregiver." (Doc. 106-1 ¶

Doc. 88 ¶¶ 2–3; Mem. 3–7). In support of his assertion that he resides in South Africa, Carter provides: (i) an August 2025 utility bill from the City of Cape Town for a property located in Cape Town, (Doc. 106-1 at 4–6); (ii) one page of his bank statement for the period ending October 15, 2025, which lists the same Cape Town address as the utility bill and contains redactions, (*id.* at 8); and (iii) four pages from Carter's U.S. Passport which indicate that the Republic of South Africa issued two documents titled "Critical Skills Visa and General Work Permit" to him in 2017 and 2025, (Doc. 88-1). I do not find these items dispositive. First, the utility bill is from August 2025, (Doc. 106-1 at 4–6), instead of October 2025 when PPG most recently attempted to serve Carter, (*see* AoS). Second, the October 2025 bank statement redacted the closing balance and cash withdrawals, but indicates a then-current outstanding balance of 0.00, (*id.* at 8), and does not otherwise indicate that Carter transacts business through this bank in South Africa because it does not detail any transactions, (*see id.*). Perhaps more telling is the outstanding balance for the bank account contains no information from the previous thirty, sixty, ninety, or 120+ days, (*id.*), indicating that the bank account may not have had any previous activity and raising questions about whether the account was opened in October 2025 when PPG attempted service. Third, the first "Critical Skills Visa and General Work Permit" submitted by Carter was issued by the Republic of South Africa on April 20, 2017 and expired on April 19, 2022, (Doc. 88-1 at 3), calling into doubt Carter's assertion that he has been residing in South Africa "[s]ince the end of December 2015," (Doc. 88 ¶ 3). Moreover, the second "Critical Skills Visa and General Work Permit" submitted by Carter was issued by the Republic of South Africa on July 22, 2025 and expires on December 23, 2027, (Doc. 88-1 at 2), further

4.) No party disputes that Carter's mother, sister, or brother-in-law are people "of suitable age and discretion who reside[]" at the Charles Drive Address.

raising doubts about where Carter was residing between April 2022, when his first Critical Skills Visa and General Work Permit expired, and July 2025, when his second Critical Skills Visa and General Work Permit was issued. This unaccounted-for temporal gap is particularly noteworthy, given that PPG twice attempted service at the Charles Drive Address in March 2025.

In arguing that the Charles Drive Address is Carter's usual place of abode, PPG points to the following evidence: (i) Carter's voter registration lists the Charles Drive Address and Carter voted in the 2020 and 2025 elections in Georgia, (Doc. 102-5); (ii) Carter's biography for the "2022 Interledger Foundation" states he "currently resides in Atlanta, GA and Cape Town South Africa with his wife and two daughters," (Doc. 102-9 at 5); (iii) Snake Nation's annual corporate registration filed with Georgia Division of Corporation on August 12, 2025 lists the Charles Drive Address as the principal place of business, (Doc. 102-10); and (iv) Carter's letters filed in this action list both the Charles Drive Address and a Cape Town address in the header, (Doc. 102-11). I also note that Carter's first letter motion dated May 16, 2025 requesting an extension of time to secure legal counsel includes the Charles Drive Address in his signature block following his name. (Doc. 73 at 2.) Although I find this evidence compelling, I do not find it dispositive.

Carter responds that his wife owns the Charles Drive Address, which is why it remains the address on file for his voter registration and the corporate address for Snake Nation, but again asserts that "since moving to South Africa at the end [of] December 2015, [he has] not lived at the Charles Drive Address." (Doc. 106-1 ¶ 3.) Further, Carter states that he "spend[s] about 20% of [his] time in the United States," including in "New York, Washington, D.C., Los Angeles and Atlanta," and that when he returns to Atlanta, he "stay[s] at a friend's house" and does "not stay at the Charles Drive Address." (*Id.* ¶ 5.) However, Carter does not indicate where

he does reside when he spends 20% of his time in the United States nor that he did not visit the Charles Drive Address during the months of March 2025 or October 2025 when service was attempted. (*See* Doc. 106-1.) Moreover, Carter does not provide his address in South Africa, (*id.*), although the utility bill and bank statement provided list an address in South Africa, (*id.* at 3–8).

"[T]he mere fact that [Carter] was not an owner of the [Charles Drive Address] is not dispositive of any issue. An individual may not own, or even spend the majority of his time, at a home that may, nonetheless, be found to constitute a dwelling place or usual place of abode within the meaning of [N.Y. C.P.L.R.] Section 308[2]. . . . Additionally, temporarily leaving a place of abode, without thereafter establishing a different dwelling place or abode, may result in a finding that the initial place of abode remains so for the purpose of service pursuant to Section 308[2]." *CSC Holdings, Inc. v. Fung*, 349 F. Supp. 2d 613, 618 (E.D.N.Y. 2004). "Although the terms 'dwelling' and 'usual place of abode' 'have eluded any hard and fast definition,' [the Second Circuit] ha[s] recognized that a person can have two or more dwelling houses or usual places of abode, provided each contains sufficient indicia of permanence." *Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010) (summary order) (citation and internal quotations marks omitted). "[T]he 'permanence' a person enjoys at one residence is not lessened by the fact that he or she enjoys permanence elsewhere." *Polygram Merch., Inc. v. New York Wholesale Co.*, No. 97-CV-6489, 2000 WL 23287, at *2 (S.D.N.Y. Jan. 13, 2000) (internal quotation marks omitted), *aff'd sub nom.*, 242 F.3d 367 (2d Cir. 2000). "Courts have identified such indicia [of permanence] as including belongings kept at the address, mail received at the address, ownership of the property, and frequent use of the property," *Rana v. Islam*, 305 F.R.D. 53, 63 (S.D.N.Y. 2015) (collecting cases), "[l]isting the address as one's residence on one's drivers license," *Jianjun Chen v. WMK*

*89th St. LLC*, No. 16-CV-5735, 2020 WL 2571010, at *8 (S.D.N.Y. May 20, 2020), and "listing its address on forms, responding to mail sent there, and representations about whether defendant resided there." *Van Leuven v. Nielsen*, No. 18-CV-1007, 2019 WL 330863, at *3 (D. Conn. Jan. 25, 2019) (citing *United States v. Mellon*, 719 F. App'x 74, 77 (2d Cir. 2018) (summary order)).

The record presented in connection with the Motion is insufficient for me to determine whether Carter has in fact lived in South Africa since 2015, or whether the Charles Drive Address is one of Carter's dwelling houses or usual places of abode. Carter does not indicate when he travelled between South Africa and the United States since this case was filed or attach a complete copy of his passport indicating such travel,[8] nor does Carter attach any South African identification documents, such as a driver's license, a lease or deed for his new residence in South Africa, or South African tax documents. PPG does not identify whether Carter possesses any cars or bank accounts registered to the Charles Drive Address, whether Carter maintains any belongings in the Charles Drive Address, whether Carter pays any bills in the Charles Drive Address, or whether Carter's driver's license lists the Charles Drive Address as his residence. However, as explained above, Carter has made public representations that he resides both in South Africa and Atlanta, (Doc. 102-9); he includes the Charles Drive Address on his communications in this case, (Doc. 102-11; Doc. 73); he likely received mail at the Charles Drive Address given his listing of this address on his communications in this case and in his voter registration, (*see* Doc. 73; Doc. 102-5; Doc. 102-11); and he voted in Atlanta in 2025 and 2020, (Docs. 102-5–102-6). Moreover, Carter's declarations and the materials attached to his declarations raise questions about whether Carter, in fact, paid bills for a South African residence

[8] Carter does include one page from his U.S. passport indicating that he entered Cape Town on November 11, 2017. (Doc. 88-1 at 3.)

since the TPC was filed, whether Carter has an active bank account in South Africa, whether Carter had a South African visa or work permit before 2017 or between 2022 and July 2025, and where Carter resides when he spends 20% of his time in the United States.

Thus, out of an abundance of caution, and "[c]onsidering the balance of equities and the general preference for deciding cases on the merits, [I use my] discretionary authority under Rule 4(m) to grant [PPG] thirty days leave to re-serve the summons along with the [TPC] . . . and file proof of service with the Court." *DeLuca*, 695 F. Supp. 2d at 67; *see also Adams v. Abrahim*, No. 24-CV-9378, 2026 WL 1080330, at *5 (S.D.N.Y. Feb. 3, 2026) ("If the Court finds that Abrahim's conclusory denials of service are sufficient to rebut the presumption of proper service, or that Abrahim's voter and motor vehicle registrations are not sufficient badges of permanence to find that Abrahim has been served, the Court should still extend time for Plaintiffs to serve Abrahim again, or to allow Plaintiffs to move for substitute or alternative service."), *report and recommendation adopted sub nom.*, 2026 WL 810313 (S.D.N.Y. Mar. 23, 2026) ("[T]he Court cannot conclude that Abrahim has been served properly yet . . . [but] [h]e has known about this lawsuit since it was filed . . .The Court accordingly extends . . . plaintiffs' deadline to serve Abrahim or move for substitute or alternative service. [Defendant] is hereby directed to disclose to plaintiffs' counsel . . . the full address of his usual place of abode."); *Doe v. Rees*, No. 3:24-CV-00274, 2026 WL 654354, at *4–5 (N.D.N.Y. Mar. 9, 2026) (("Ultimately, the Court need not resolve every doubt about whether Defendant resided at the Roscoe Address. . . . . Plaintiffs have demonstrated that their efforts to obtain information regarding Defendant's current residence or place of abode through ordinary means . . . has proven ineffectual. Thus, the Court directs service upon defendant's attorneys"). (internal quotation marks and citations omitted and alterations adopted)).

The Republic of South Africa is not a signatory to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents[9] or the Inter-American Convention on Letters Rogatory.[10] The parties do not cite to, nor am I aware of, any international agreements regarding service between the Republic of South Africa and the United States. Accordingly, I find that PPG's requested alternative service of process by international courier and email, (Opp'n 10–11), is not prohibited by any international agreement. *See Newton v. Robinson*, No. 26-CV-01056, 2026 WL 1710411, at *1 (C.D. Cal. June 1, 2026) ("South Africa is not a signatory to the Hague Service Convention, and no other international agreement known to the Court and applicable to the South Africa prohibits service by email. The proposed method [of service by email] thus falls within the scope of [Fed. R. Civ. P.] 4(f)(3)."); *Lexmark Int'l, Inc. v. Ink Techs. Printer Supplies, LLC*, No. 1:10-CV-564, 2013 WL 12178588, at *9 (S.D. Ohio Aug. 21, 2013) (permitting service via international mail for a defendant residing in South Africa); *Eco Glob. Sales Grp., Inc. v. Eco Tabs Gauteng (Pty) Ltd.*, No. 25-CV-61132, 2025 WL 2829583, at *1 (S.D. Fla. July 31, 2025) (permitting service via email and international mail for defendants residing in South Africa); *Draken Int'l, LLC. v. Denel SOC LTD*, No. 25-CV-2206, 2025 WL 3776933, at *2 (M.D. Fla. Oct. 17, 2025) (same). Accordingly, PPG's time to serve Carter with the summons and TPC is extended to thirty days from the issuance of this Opinion & Order. PPG must serve Carter by (i) email to karl@snakenation.co, the email he has used in his communications in this case, and (ii) international mail at an address to be provided by Carter's counsel where service of process will be accepted.

---

[9] *See* Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial documents in Civil or Commercial Matters: Status Table, HCCH (2023), https://www.hcch.net/en/instruments/conventions/status-table/?cid=17.

[10] *See* Inter-American Service Convention and Additional Protocol, U.S. Dep't of State, https://travel.state.gov/content/travel/en/legal/travel-legal-considerations/internl-judicial-asst/Service-of-Process/Inter-American-Service-Convention-Additional-Protocol.html.

Accordingly, Carter's motion to dismiss under Federal Rule of Civil Procedure 12(b)(5) is DENIED.

**B. *Failure to State a Claim***

Carter also moves to dismiss the TPC for failure to state a claim, arguing that PPG "failed to properly assert a claim pursuant to Federal Rule of Civil Procedure 14(a)" "[b]ecause [PPG's] third-party claim against Mr. Carter is not dependent on its liability to Plaintiff." (Mem. 8 (emphasis omitted).) Rule 14 provides that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1). "This standard is not a mere technicality; rather the pleading requirement is clear-'the third-party defendant's liability to the third-party plaintiff must be dependent upon the outcome of the main claim or the third-party defendant must be potentially secondarily liable as a contributor to the defendant.'" *Le Metier Beauty Inv. Partners LLC v. Metier Tribeca, LLC*, No. 13-CV-4650, 2015 WL 7078641, at *3 (S.D.N.Y. Nov. 12, 2015) (internal quotation marks omitted). The standard for third-party pleading is not met here. PPG is not attempting to transfer any of its potential liability in the main action to Snake Nation and Carter, as PPG does not assert claims against Snake Nation or Carter alleging that they are, or may be, liable to PPG for Snake Nation's claims asserted against PPG. Snake Nation's Complaint brings claims against Defendants—related to a September 1, 2017 Master Services Agreement between PPG and Snake Nation—for: (i) breach of contract, (ii) breach of the implied covenant, (iii) unjust enrichment, (iv) injurious falsehood, (v) tortious interference, and (vi) unfair competition. (Compl. ¶¶ 66–125.) The TPC seeks to hold Snake Nation and Carter liable based on the same contract and claims, including some of the same claims as Snake Nation's Complaint, for: (i) fraudulent inducement, (ii) willful misrepresentation, (iii) breach of

contract, (iv) breach of the implied covenant, (v) unjust enrichment, and (vi) unfair competition. (*See* TPC ¶¶ 55–88.) "Since [PPG] [is] *not* claiming that [Carter] [is] liable for any part of [Snake Nation's] claims against [PPG], Rule 14 was not the proper vehicle to bring [Carter] into the case." *Gunderson Amazing Fireworks, LLC v. Merrick Bank*, No. 12-CV-3869, 2016 WL 4468235, at *2 (E.D.N.Y. Aug. 24, 2016) (emphasis in original).

Instead, PPG's claims against Carter are more appropriately covered by Rule 13(h), which provides that "Rules 19 and 20 govern the addition of a person as a party to a counterclaim or crossclaim." Fed. R. Civ. P. 13(h). PPG argues that "[t]o the extent that it was more accurate for PPG to identify Carter as an additional counterclaim defendant, rather than a third-party defendant, the Court should not penalize PPG or subject PPG to the delay caused by amending its pleading to relabel Carter as an additional counterclaim defendant." (Opp'n 4–5.)[11] It is clear that PPG asserts counterclaims under Rule 20(a) instead of impleader under Rule 14(a), thus "the propriety of adding [Carter] as [a] part[y] must be examined under Rule 20." *Levine v. Landy*, 860 F. Supp. 2d 184, 187 (N.D.N.Y. 2012) ("Although [complaining parties] styled their claims [] as 'third-party claims,' and refer to the two as 'third-party defendants,' it should be noted that this is not a case of true third-party practice. . . . the propriety of adding [the] parties must be examined under Rule 20."); *see also Le Metier Beauty Inv. Partners LLC v. Metier Tribeca, LLC*, No. 13-CV-4650, 2015 WL 7078641, at *4 (S.D.N.Y. Nov. 12, 2015) (approving joinder of counterclaim defendants under Rule 20(a) after finding that the third-party complaint was an improper impleader under Rule 14(a)).

[11] Though not dispositive, I note that Carter did not respond, let alone object, to PPG's arguments regarding its mischaracterization of Carter as a third-party defendant instead of a counterclaim defendant. (*See generally* Reply.)

Rule 20(a) governs the permissive joinder of parties and provides that a non-party may be joined as a counterclaim-defendant if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). "To determine whether Rule 20's 'transaction or occurrence' requirement is met, courts in this Circuit apply the 'logical relationship' test that the Second Circuit applies in the context of Rule 13 to assess whether a counterclaim arises out of the same transaction or occurrence as the original claim." *Olshan Frome Wolosky LLP v. Comm. to Restore Nymox S'holder Value Inc.*, No. 24-CV-2134, 2025 WL 880545, at *7 (S.D.N.Y. Mar. 21, 2025) (internal quotation marks omitted). "Under that test, the 'transaction or occurrence' requirement is met where the essential facts of the claims [are] so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Id.* (internal quotation marks omitted).

The claims in the TPC arise out of the same Master Services Agreement and events surrounding the signing of and work performed under the Master Services Agreement as alleged in Snake Nation's Complaint against Defendants. (*See* Compl.; TPC *passim*.) Indeed, Snake Nation's Complaint brings claims for breach of contract, breach of the implied covenant, unjust enrichment, and unfair competition against Defendants. (Compl. ¶¶ 66–95, 117–125.) The TPC also alleges breach of contract, breach of the implied covenant, unjust enrichment, and unfair competition, but due to Snake Nation and Carter's actions. (TPC ¶¶ 68–88.) Thus, the first prong is satisfied. The second prong requiring that a "question of law or fact common to all defendants will arise in the action," Federal Rule of Civil Procedure 20(a), is also met here for the same reason. Whether Snake Nation, Carter, or Defendants breached the Master Services

Agreement, breached the implied covenant of good faith and fair dealing, were unjustly enriched, or engaged in unfair competition are common questions of law or fact that will be determined.

Accordingly, the requirements for permissive joinder under Rule 20 are met, and Carter may properly be joined as a counter-defendant. Henceforth, PPG's claims in the Third-Party Complaint, (TPC ¶¶ 55–88), will be treated as counterclaims.

## IV. Conclusion

For the reasons stated above, Carter's motion to dismiss PPG's TPC, (Doc. 87), is DENIED.

By October 6, 2026, Carter's counsel shall provide an address at which Carter will accept service of process. By November 2, 2026, PPG shall serve Carter with the summons and TPC by sending a copy of the summons and TPC by (i) email to karl@snakenation.co and (ii) international mail to the address to be provided by Carter's counsel. PPG shall subsequently file proof of service within seven (7) days of serving Carter.

The Clerk of Court is respectfully directed to terminate the motions pending at Docs. 87, 88, and 89, and to amend the docket consistent with the caption in this Opinion & Order, to reflect that Carter is a counter-defendant.

SO ORDERED.

Dated: September 30, 2026
New York, New York

Vernon S. Broderick
United States District Judge